T.C. Memo. 2009-156


UNITED STATES TAX COURT


JAMES W. AND MATTIE M. JOHNSON, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 15322-07.                    Filed June 29, 2009.


In 2000 P-H sued a mortgage company over an
attempted foreclosure of his residence.  In 2004 P-H
received a $25,000 lump-sum award in settlement of the
lawsuit from which his attorney retained $3,500 in
fees.  Ps filed a joint Federal income tax return for
2004 which excluded P-H's settlement award from gross
income pursuant to I.R.C. sec. 104(a)(2).  R determined
a deficiency in Ps' Federal income tax for 2004 on the
basis that the settlement award was not excludable from
gross income under I.R.C. sec. 104(a)(2).  Ps
petitioned this Court for a redetermination of the
deficiency.  Additionally, Ps' amended petition seeks
innocent spouse relief for P-W under I.R.C. sec. 6015.

<u>Held</u>:  P-H's settlement award is not excludable
from gross income under I.R.C. sec. 104(a)(2) for tax
year 2004 because Ps failed to prove that the
settlement award, or any part thereof, was received on
account of personal physical injuries or physical
sickness.

Held, further, Ps may deduct attorney's fees of $3,500 incurred in 2004 as a miscellaneous itemized deduction under I.R.C. sec. 67, subject to the 2-percent floor.

Held, further, P-W is not entitled to innocent spouse relief pursuant to I.R.C. sec. 6015 for tax year 2004.

James W. Johnson, pro se.

Erin R. Hines, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

GUSTAFSON, Judge:  This case is before the Court on the petition of James W. and Mattie T. Johnson for a redetermination of their Federal income tax deficiency for 2004, which the Internal Revenue Service (IRS) determined to be $3,952.  The issues to be decided here[1] are:  (a) whether the Johnsons are entitled to exclude from income $25,000 in settlement proceeds paid to Mr. Johnson in 2004; if not, (b) whether and in what amount the Johnsons are entitled to deduct attorney's fees incurred in connection with that settlement; and (c) whether

---

[1] The IRS also determined in the statutory notice of deficiency that Mrs. Johnson had unreported interest income of $37.  The Johnsons did not dispute this adjustment at trial, and it is therefore deemed conceded.

Mrs. Johnson is entitled to relief from joint and several liability under section 6015.[2]

FINDINGS OF FACT

This case was tried in Washington, D.C., on November 5, 2008. Mr. Johnson was the sole witness; and Exhibits 1-J (the Johnsons' tax return), 2-J (the notice of deficiency), and 3-P (a draft of the settlement agreement) were entered into evidence. On the basis of that evidence, we find as follows:

Settlement of Mortgage Dispute

James W. and Mattie M. Johnson are husband and wife, and they were married and lived together at all times relevant to this case. In 2000 Mr. Johnson had a dispute with a mortgage company over an attempted foreclosure on the Johnsons' residence, which was owned solely by Mr. Johnson. Mr. Johnson hired an attorney to file a lawsuit on his behalf, and Mrs. Johnson was not a party to that suit. Mr. Johnson did not offer into evidence the pleadings in that lawsuit, but his understanding of the nature of the lawsuit is that it was for breach of contract. The record includes no other information about the nature of the claims, the damages alleged, or the relief sought in the complaint.

---

[2]Except as otherwise noted, all section references are to the Internal Revenue Code (26 U.S.C.), and all Rule references are to the Tax Court Rules of Practice and Procedure.

The dispute ended in 2004 with a settlement agreement, which included a provision that stated:

> Plaintiff has indicated that it is their [sic] intent that the proceeds of the settlement contemplated hereby are going to be treated as damages for their pain and suffering in connection with the personal injuries they have alleged to have suffered as alleged in the Subject Litigation. * * * [The defendant mortgage company] makes no representation or warranty as to effect of this Agreement upon Plaintiff's liabilities pursuant to federal, state or local tax laws or regulations.

The record includes no other information about the defendant mortgage company's evaluation of any claim by Mr. Johnson for "pain and suffering in connection with the personal injuries they have alleged to have suffered" or the importance of that claim in the settlement context. The record includes no evidence that Mrs. Johnson's pain and suffering (i.e., from her sickness discussed below) was pleaded in the lawsuit or pressed in the settlement negotiations.

Attorney's Fees

Under the settlement agreement, the mortgage company paid Mr. Johnson $25,000 in 2004 by a check payable to him (and not to Mrs. Johnson). Mr. Johnson signed over the $25,000 settlement check to the attorney representing him in the case. The attorney retained a portion and wrote Mr. Johnson a check for the balance.

We find that the fees retained by the attorney in 2004 amounted to $3,500.[3]

Mrs. Johnson's Connection With the Settlement

At the time of the settlement in July 2004, Mrs. Johnson suffered from breast cancer, had recently undergone surgery, and was very sick.  Mr. Johnson spent most of the settlement proceeds on expenses that he felt were related to or arose from her situation or that otherwise benefited her--medical expenses, household expenses, and a car that he used to take her to medical appointments.  Because of Mrs. Johnson's poor health, Mr. Johnson avoided discussing financial matters with Mrs. Johnson in 2004 and 2005, including his lawsuit against the mortgage company and the settlement proceeds therefrom.  Furthermore, Mrs. Johnson is involved in the family's financial affairs, has a high school education, and noticed the purchase of the car.  Mrs. Johnson has her own bank accounts, and she and Mr. Johnson split the household bills.

---

[3]Mr. Johnson originally testified that the fees were "approximately $4,000", but he later admitted, "I don't remember the exact amount" and said that the check ultimately delivered to him was "about 21, 21.5 [thousand], something like that". Although he did not offer documentation to prove the amount of the fees, it is clear from the settlement agreement that no separate payment was made for attorney's fees, and that any fees would have to be recovered from the $25,000 payment. Mr. Johnson's testimony about the fact of the attorney's retention of fees was credible; but because he failed to document a precise amount of fees, we find an amount at the lowest end of the range to which he testified.

The Johnsons filed their joint 2004 tax return in April 2005. Mrs. Johnson's health was a continuing issue in 2005, but Mr. Johnson could not recall (and the record does not otherwise show) what her condition was when the return was filed.

On April 2, 2007, the IRS issued to the Johnsons a statutory notice of deficiency, determining a deficiency in tax for 2004 attributable primarily to the omission of the $25,000 in settlement proceeds from the gross income reported on their return. The Johnsons timely petitioned this Court for a redetermination of that deficiency on July 5, 2007, at which time they resided in Washington, D.C. In an amended petition filed December 10, 2007, the Johnsons also requested that Mrs. Johnson be excused from joint and several liability as an innocent spouse under section 6015.

## OPINION

The IRS's determinations are presumed correct, and Mr. and Mrs. Johnson, as the petitioners in this case, have the burden of establishing that the determinations in the notice of deficiency are erroneous. See Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933). In general, they did not meet that burden.

## I. The Settlement Proceeds

Section 61(a) provides the following broad definition of the term "gross income": "Except as otherwise provided in this subtitle, gross income means all income from whatever source

derived". Section 61(a) is thus broad in its scope, and exclusions from gross income must be narrowly construed. Commissioner v. Schleier, 515 U.S. 323, 328 (1995).

Section 104(a) provides that gross income does not include:

> (2) the amount of any damages[4] (other than punitive damages) received (whether by suit or agreement and whether as lump sums or as periodic payments) on account of personal physical injuries or physical sickness;

> \*     \*     \*     \*     \*     \*     \*

> \* \* \* For purposes of paragraph (2), emotional distress shall not be treated as a physical injury or physical sickness.[5] \* \* \*

Therefore, to be excludable from gross income under section 104(a)(2), a settlement award must be paid to a taxpayer on account of physical injury or physical sickness, which does not include emotional distress or symptoms thereof, arising from tort or tort-like causes of action. Sec. 1.104-1(c), Income Tax Regs.

Where damages are received pursuant to a settlement agreement like Mr. Johnson's, the nature of the claim that was the actual basis for settlement controls whether such damages are

---

[4]The term "damages received (whether by suit or agreement)" means an amount received (other than workmen's compensation) through prosecution of a legal suit or action based upon tort or tort type rights, or through a settlement agreement entered into in lieu of such prosecution. Sec. 1.104-1(c), Income Tax Regs.

[5]"It is intended that the term emotional distress includes symptoms (e.g., insomnia, headaches, stomach disorders) which may result from such emotional distress." H. Conf. Rept. 104-737, at 301 n.56 (1996), 1996-3 C.B. 741, 1041.

excludable under section 104(a)(2).  <u>United States v. Burke</u>, 504 U.S. 229, 237 (1992).  Whether the settlement payment is excludable from gross income under section 104(a)(2) depends on the nature and the character of the claims asserted in the lawsuit.  See <u>Bent v. Commissioner</u>, 87 T.C. 236, 244 (1986), affd. 835 F.2d 67 (3d Cir. 1987); <u>Church v. Commissioner</u>, 80 T.C. 1104, 1106-1107 (1983); <u>Glynn v. Commissioner</u>, 76 T.C. 116, 119 (1981), affd. without published opinion 676 F.2d 682 (1st Cir. 1982).  The determination of the underlying nature of the claim is factual.  <u>Robinson v. Commissioner</u>, 102 T.C. 116, 126 (1994), affd. in part, revd. in part and remanded on another issue 70 F.3d 34 (5th Cir. 1995); <u>Seay v. Commissioner</u>, 58 T.C. 32, 37 (1972).

Where there is a settlement agreement, the determination of the nature of the claim is usually made by reference to the agreement.  See <u>Knuckles v. Commissioner</u>, 349 F.2d 610, 613 (10th Cir. 1965), affg. T.C. Memo. 1964-33; <u>Robinson v. Commissioner</u>, <u>supra</u> at 126.  If the settlement agreement lacks express language stating the claim that the payment was to settle, the intent of the payor (here, the mortgage company) is critical to that determination.  <u>Knuckles v. Commissioner</u>, <u>supra</u> at 613; see also <u>Agar v. Commissioner</u>, 290 F.2d 283, 284 (2d Cir. 1961), affg. per curiam T.C. Memo. 1960-21.

The settlement agreement, on its face, does not list the claims Mr. Johnson brought against the mortgage company, but the settlement is intended to settle the claims that were "filed in [that] action". Mr. Johnson did not offer into evidence the pleadings in that suit against the mortgage company, and the record includes no other information about the nature of the claims, the damages alleged, or the relief sought in the complaint. Mr. Johnson testified that his understanding of the nature of the suit is that it was for breach of contract.

The first requirement for exclusion under section 104(a)(2) is that the claim underlying the settlement agreement be based on tort or tort-type rights. Commissioner v. Schleier, supra. A tort is defined as a "'civil wrong, other than breach of contract, for which the court will provide a remedy in the form of an action for damages.'" United States v. Burke, supra at 234 (quoting Keeton et al., Prosser and Keeton on the Law of Torts 2 (5th ed. 1984)) (emphasis added). Breach of contract does not sound in tort, so to the extent that the agreement with the mortgage company was made to satisfy that contract claim, any settlement proceeds would not be excludable under section 104(a)(2). See Metzger v. Commissioner, 88 T.C. 834, 848-850, 858 (1987), affd. without published opinion 845 F.2d 1013 (3d Cir. 1988); Reisman v. Commissioner, T.C. Memo. 2000-173, affd. without published opinion 248 F.3d 1151 (6th Cir. 2001).

Mr. Johnson did not allege or present any evidence at trial to show that there were actual physical injuries that the mortgage company intended to compensate in its settlement. And the only evidence he presented regarding the underlying action was his assertion that it was for breach of contract. As a result, on the basis of the record before us, we cannot find that Mr. Johnson received any portion of the $25,000 as compensation for a physical injury.[6] For that reason, we find that the $25,000 is not excludable under section 104(a)(2) from Mr. Johnson's gross income for his tax year 2004.[7]

II. Attorney's Fees

When a litigant's recovery constitutes taxable income, such income includes the portion of the recovery paid to the litigant's attorney. Commissioner v. Banks, 543 U.S. 426 (2005). As there is no statute excluding any portion of Mr. Johnson's

_____

[6]Although the settlement agreement includes a statement that Mr. Johnson intended the "proceeds of the settlement contemplated * * * to be treated as damages for [his] pain and suffering", we find no evidence to support that characterization. Moreover, it is the payor's intent, not the payee's, that governs the character of the settlement payment.

[7]In his testimony Mr. Johnson stressed that the attorney representing him in his dispute against the mortgage company had advised him that the settlement proceeds would not be taxable. If a penalty were at issue here, then such advice might be relevant in a "reasonable cause" defense under section 6664(c). However, the IRS did not determine a penalty against the Johnsons, and this erroneous advice can have no effect on the outcome in this case.

settlement from his gross income, we find that Mr. Johnson's entire settlement constitutes gross income. Cf. sec. 62(a)(20) and (21) (allowing an above-the-line deduction from gross income for attorney's fees and court costs associated with discrimination suits and attorney's fees related to awards to whistleblowers). Therefore, even though Mr. Johnson paid his attorney $3,500 from the proceeds of his settlement, the entire $25,000 settlement is recognized as gross income to Mr. Johnson in 2004. The Johnsons, however, may deduct the attorney's fees of $3,500 as miscellaneous expenses under section 67. See Commissioner v. Banks, supra at 432. By definition, miscellaneous itemized deductions are subject to a 2-percent floor, meaning the Johnsons can deduct these expenses only to the extent that they exceed 2 percent of their adjusted gross income for 2004--i.e., in this instance, to the extent they exceed approximately $1,400. See sec. 67(a). Accordingly, we will order the parties to recalculate the deficiency amount under Rule 155 taking into account the payment of $3,500 for attorney's fees.

III. Mrs. Johnson's Claim for Innocent Spouse Relief Under Section 6015

In general, spouses who elect to file a joint Federal income tax return are jointly and severally liable for the entire amount of tax reported on the return, as well as for the liability for any deficiency subsequently determined, even if all of the income

giving rise to the tax liability is allocable to only one of them. Sec. 6013(d)(3); <u>Butler v. Commissioner</u>, 114 T.C. 276, 282 (2000). However, section 6015 provides three exceptions from this joint and several liability for so-called innocent spouses, and two of those exceptions are potentially applicable here. Sec. 6015(b), (c),[8] (f). Mrs. Johnson bears the burden of proving that one of those exceptions applies. See Rule 142(a); <u>Alt v. Commissioner</u>, 119 T.C. 306, 311 (2002), affd. 101 Fed. Appx. 34 (6th Cir. 2004).

A. <u>Relief Under Section 6015(b)</u>

Section 6015(b) provides relief from joint and several liability for tax (including interest, penalties, and other amounts) if the requesting spouse satisfies the following five requirements of section 6015(b)(1):

> (A) a joint return has been made for a taxable year;

> (B) on such return there is an understatement of tax attributable to erroneous items of 1 individual filing the joint return;

> (C) the other individual filing the joint return establishes that in signing the return he or she did not know, and had no reason to know, that there was such understatement;

---

[8]Section 6015(c) is inapplicable in this case, because Mr. and Mrs. Johnson were married and lived together at the time Mrs. Johnson elected innocent spouse relief under section 6015 by filing the amended petition on December 10, 2007. See sec. 6015(c)(3)(A)(i).

(D) taking into account all the facts and circumstances, it is inequitable to hold the other individual liable for the deficiency in tax for such taxable year attributable to such understatement; and

(E) the other individual * * * [makes a valid election for relief] * * *.

Respondent concedes that Mrs. Johnson has satisfied the requirements under subparagraphs (A) and (E) of section 6015(b)(1). At issue are the requirements under subparagraphs (B), (C), and (D).

Mrs. Johnson satisfies the requirement under section 6015(b)(1)(B) with respect to the $25,000 of settlement proceeds paid to Mr. Johnson, because the understatement of tax resulting from the non-reporting of the settlement proceeds is properly attributable to Mr. Johnson.[9]  However, Mrs. Johnson has failed to meet her burden of proof to show that the requirements under section 6015(b)(1)(C) and (D) are met.

1. <u>Mrs. Johnson's Knowledge or Reason To Know of the Understatement</u>

For section 6015(b) to apply, subparagraph (C) requires the requesting spouse to establish that she did not know or have reason to know of the understatement with respect to which she seeks relief. In deciding whether a spouse "has reason to know"

---

[9]However, Mrs. Johnson does not satisfy the requirement under section 6015(b)(1)(B) with respect to the $37 of unreported interest income paid to her, because the understatement of tax resulting from that income is properly attributable to her, not Mr. Johnson.

of an understatement, we undertake a subjective inquiry, and we recognize several factors that are relevant to our analysis, including: (i) the alleged innocent spouse's level of education; (ii) the spouse's involvement in the family's business and financial affairs; (iii) the presence of expenditures that appear lavish or unusual when compared to the family's past income levels, income standards, and spending patterns; and (iv) the culpable spouses's evasiveness and deceit concerning the couple's finances. Butler v. Commissioner, supra at 284.

Mrs. Johnson did not testify in support of her claim for relief under section 6015, but relied instead on the testimony of her husband. While Mr. Johnson's willingness to accept the blame for the non-reporting of the settlement proceeds shows a commendable willingness to take responsibility for this error, it does not suffice to carry Mrs. Johnson's burden to show her entitlement to relief from joint and several liability.

Mrs. Johnson has a high school education and was involved in her family's finances. Although Mr. Johnson avoided discussing the settlement proceeds with Mrs. Johnson in 2004 and 2005 because of her poor health, the record does not show that Mr. Johnson deceived Mrs. Johnson or attempted to hide the settlement proceeds from her. Moreover, a portion of the settlement proceeds was used to purchase a car at a time when the family finances had been problematic, and Mrs. Johnson both used the car

and took notice of that conspicuous purchase. To prove that she nonetheless did not know or have reason to know of the unreported settlement proceeds that paid for the car and other expenses, she should have offered her own testimony (and should have subjected herself to cross-examination on the point). In the absence of such testimony, we infer that it would have been unfavorable to her. See <u>Wichita Terminal Elevator Co. v. Commissioner</u>, 6 T.C. 1158, 1165 (1946), affd. 162 F.2d 513 (10th Cir. 1947). Thus, Mrs. Johnson failed to establish that she did not know or have reason to know of the understatement resulting from the non-reporting of the settlement proceeds.

   2.   <u>Inequity of Holding Mrs. Johnson Jointly and Severally Liable</u>

For section 6015(b) to apply, subparagraph (D) requires that in light of all the facts and circumstances, it is inequitable to hold the requesting spouse jointly and severally liable. The most oft-cited material factors to be considered are: (i) whether there has been a significant benefit to the spouse claiming relief, and (ii) whether the failure to report the correct tax liability on the joint return results from concealment, overreaching, or any other wrongdoing on the part of the other spouse. <u>Alt v. Commissioner</u>, <u>supra</u> at 314 (citing <u>Jonson v. Commissioner</u>, 118 T.C. 106, 119 (2002), affd. 353 F.3d 1181 (10th Cir. 2003)). The particulars of the Johnsons' situation do not reflect inequities of this sort. It is clear

that both Mr. and Mrs. Johnson benefited from the settlement proceeds and from the tax savings that resulted from not reporting those proceeds as income.  Mr. Johnson spent most of the settlement proceeds on expenses that benefited Mrs. Johnson, including her medical expenses, household expenses, and a car that he used to take her to medical appointments.  It is also clear that there was no deception or concealment on Mr. Johnson's part.

We also may consider whether the requesting spouse was deserted, divorced, or separated.  See Alt v. Commissioner, 119 T.C. at 315 (citing Walters v. Commissioner, T.C. Memo. 1998-111).  The Johnsons were married and remain married.  The two have not separated, and Mrs. Johnson has not been left by her husband to deal with the tax liability alone.  On the contrary, Mr. Johnson has testified on behalf of his wife and represented her in this Court.  Mrs. Johnson continues to benefit from her husband's assets and income, in addition to her own.  Therefore, we hold that it would not be inequitable to hold Mrs. Johnson liable for the deficiency in tax for 2004.

Accordingly, we conclude that Mrs. Johnson is not entitled to relief under section 6015(b).

B.    Relief Under Section 6015(f)

The IRS "may relieve" a spouse of joint and several liability pursuant to section 6015(f) if, "taking into account

all the facts and circumstances, it is inequitable to hold the individual liable for any unpaid tax or any deficiency (or any portion of either)" and "relief is not available to such individual under subsection (b) or (c)".  Considering the facts and circumstances of this case, we held under section 6015(b)(1)(D) that it is not inequitable to hold Mrs. Johnson jointly and severally liable for the deficiency.  We have previously held that the language of section 6015(f)(1) does not differ significantly from the language of section 6015(b)(1)(D).  Alt v. Commissioner, supra at 316 (citing Butler v. Commissioner, supra at 291).  Further, the equitable factors we considered under section 6015(b)(1)(D) are the same equitable factors we consider under section 6015(f).  Alt v. Commissioner, supra at 316.  Therefore, we likewise conclude that Mrs. Johnson is not entitled to relief under section 6015(f).

To reflect the foregoing,

Decision will be entered under Rule 155.